IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Pearle Vision, Inc., | : | |
| | : | Case No. 1:07CV321 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING PLAINTIFF'S |
| Jeffrey A. Adler, | : | MOTION FOR A PRELIMINARY |
| | : | INJUNCTION |
| Defendant. | : | |

This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction. (Doc. 13.)  The dispute centers around the dissolution of a franchise relationship between Pearle Vision, Inc. ("PVI")  and Dr. Jeffrey A. Adler ("Dr. Adler" or "Defendant Adler"), particularly as it relates to a real estate leasehold located in a shopping center in Jackson Heights, New York. PVI claims that it is entitled to an assignment of the lease, which is currently held by Dr. Adler, on the Jackson Heights property pursuant to the parties' franchise agreement.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.  Dr. Adler is hereby preliminarily enjoined from seeking an assignment of his Jackson Heights lease to any third party unless and until he first offers to assign the lease to PVI.  Further, the Court orders Dr. Adler to, within a reasonable time not to exceed thirty days from the date of this order, seek the Landlord's approval to assign the Jackson Heights lease to PVI.  Should PVI refuse to accept the assignment or should the Landlord fail to approve a documented request to assign the lease to PVI within thirty days of Dr. Adler's request, Dr. Adler will then be free to seek an assignment of the lease to a third party or to remain in possession of the premises as lessee in accordance with the terms set forth in Section 34 of the parties' franchise agreement.

1

**I.     BACKGROUND**

The plaintiff, PVI, is a franchiser of retail stores that sell optical products and professional services. Defendant Adler operated a Pearle Vision retail store at 75-37 31st Ave., Jackson Heights, New York, pursuant to a franchise agreement that was dated November 21, 2002 (hereinafter "Franchise Agreement").[1] The Franchise Agreement expired on August 31, 2007. However, Dr. Adler continues to operate a retail optical store under the name Pearle Vision out of the Jackson Heights location.

At the time PVI and Dr. Adler entered into the Franchise Agreement, PVI held the lease for the Jackson Heights property, which is owned by Allied Jackson Heights, LLC (hereinafter "Landlord"). Therefore, in addition to executing the Franchise Agreement, the parties executed a separate lease agreement (hereinafter "Sublease Agreement") whereby Adler agreed to sublease the property from PVI.[2] The base lease agreement, held by PVI, was, like the Franchise Agreement, set to expire August 31, 2007.

Sometime during 2006, PVI implemented a system-wide policy that it would no longer hold lease agreements for franchise locations. PVI therefore required all franchisees to enter into direct lease agreements with the property owners. According to PVI, the terms of the direct lease agreements were to be consistent with the corresponding franchise agreements. (Vaughan Decl. ¶ 7, doc. 9-2; Benton Decl. ¶ 3, doc. 9-6.) On October 23, 2006, PVI contacted Adler about the impending change. Specifically, PVI informed Adler that as of August 31, 2007, PVI

---

[1] The Franchise Agreement, attached as Exhibit 1 to the Declaration of Andra Terrell, can be found at CM/ECF Documents 9-3, 9-4, and 9-5.

[2] The Sublease Agreement is attached to the Franchise Agreement as "Attachment J." (Doc. 9-4 at 20.)

would not continue to act as the lease holder of the Jackson Heights property. (Terrell Decl. Ex. 2, doc. 9-5.) Further, PVI required Adler to negotiate a direct lease with the owner of the property as a condition precedent to renewing his Franchise Agreement. (Id.) To comply with the new requirement, Dr. Adler agreed that his company, Rosing Corp. would assume PVI's lease. On January 1, 2007, PVI, Rosing Corp., and the landlord entered into an Assignment, Assumption, Consent and Modification Agreement (hereinafter "Lease Assignment").[3] The Lease Assignment is signed by representatives of the Landlord and PVI. Dr. Adler signed the Assignment on behalf of Rosing Corp. (See Doc. 9-5 at 39.)

Shortly thereafter, Dr. Adler notified PVI that he did not intend to enter into a new franchise agreement and that, upon expiration of the current agreement, he intended to operate an independent optical store out of the Jackson Heights location. On April 20, 2007, after receiving Dr. Adler's notice, PVI filed the instant lawsuit.[4] PVI claims that the parties' Franchise Agreement gives PVI the right to lease the Jackson Heights premises from Dr. Adler or to assume Dr. Adler's third-party lease. On August 13, 2007, PVI Senior Franchise Counsel Andra Terrell mailed Dr. Adler a Confirmation of Expiration regarding the impending expiration of the Franchise Agreement (Terrell Decl. Ex. 5, doc. 9.5 at 42.) Included in the confirmation letter was notice of PVI's election to assume Adler's lease:

> PVI hereby elects to assume the Lease for the location in accordance with Section 34.A of the Franchise Agreement. To that end, Franchisee must cooperate with PVI to provide for an orderly change of management and an orderly disposition of the assets used in the operation of the Franchise Location and peaceably surrender

---

[3] The Lease Assignment is attached as Exhibit 3 to the Declaration of Andra Terrell and can be found at CM/ECF Document 9-5 at 36.

[4] Since first filing the case, PVI has filed two amended complaints. (Docs. 5, 12.) The most recent, PVI's Second Amended Complaint, was filed on September 6, 2007. (Doc. 12.)

> possession of the Franchise Location to PVI.  Please contact me upon receipt of this notice at the number provided previously to arrange for assignment of the Lease, which must be effective by close of business on the Expiration Date.

(Id. at 43.)  On August 28, 2007, Dr. Adler responded that he would not assign the lease to PVI.

After learning, on August 29, 2007, that Dr. Adler planned to assign the lease to a third party, PVI filed a Motion for a Temporary Restraining Order.  (Doc. 9.)  On August 31, 2007, the Court held a scheduling conference and set a preliminary injunction hearing for September 17, 2007.  PVI subsequently filed a Motion for Preliminary Injunction (doc. 13) on September 6, 2007 and Defendant filed a Response on September 12, 2007 (doc. 16).

The Court held a preliminary injunction hearing as scheduled on September 17, 2007.  At the close of that hearing, the parties expressed willingness to explore settlement possibilities.  Accordingly, the Court postponed ruling on Plaintiff's Motion for Preliminary Injunction and ordered the parties to mediate the matter and to submit their exhibits if the case did not settle.

Following the hearing, the parties engaged in settlement discussions spanning several months.  After receiving notification that the negotiations had fallen apart, the Court held a status conference on January 8, 2008.  At that conference, the Court expressed concern that Plaintiff's Motion for Preliminary Injunction was stale and that changed circumstances may affect the Court's consideration as to whether there remains a risk of irreparable harm.  Responding to this concern, Defendant indicated that the circumstances had indeed changed since the preliminary injunction hearing and that Defendant intended to submit an affidavit showing there is no risk of irreparable harm in this matter.  Following that conference, Defendant submitted a declaration on January 22, 2008 and Plaintiff submitted a response in opposition to Defendant's declaration on February 11, 2008.  This matter is now ripe for review.

**II.     LEGAL STANDARD**

PVI's motion is governed by Fed. R. Civ. P. 65.  The decision whether or not to grant a request for interim injunctive relief falls within the sound discretion of the district court. Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 102 (6th Cir. 1982).  A preliminary injunction is an extraordinary remedy that should be granted only after consideration of the following four factors:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by issuance of preliminary injunctive relief.  See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000); see also Mason County Med. Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977).

**III.    ANALYSIS**

    **A.     Strong Likelihood of Success on the Merits**

PVI's Second Amended Complaint seeks specific performance of the Franchise Agreement and asserts several counts of breach of the agreement.  (Doc. 12.)  With its Motion for Preliminary Injunction, PVI seeks an order enjoining Dr. Adler from assigning or transferring the lease and requiring Dr. Adler to assign the lease to PVI.  As to the first factor that the Court must consider, PVI argues that the Franchise Agreement unequivocally extends it the right to assume Dr. Adler's lease and that Dr. Adler's refusal to take steps necessary to assign the Jackson Heights lease to PVI constitutes a breach of the Agreement.

In asserting a right to assume Dr. Adler's lease, PVI relies heavily on Section 34.A of the Franchise Agreement, which grants PVI the right to assume Dr. Adler's third-party lease upon

termination of the Agreement:

> 34. Effect of Expiration or Termination
>
> A. Franchisee's right to use the Pearle Vision System and the Marks ceases Immediately upon the Scheduled Expiration Date of this Agreement or upon the expiration or termination of this Agreement. Franchisee agrees to immediately pay all sums due and owing to PVI or its Affiliates, as well as all sums due and owing to any third parties. Franchisee agrees to cooperate with PVI to provide for an orderly change of management and disposition of any assets used in the operation of the Franchise Business. If Franchisee is leasing or subleasing the Location from PVI, Franchisee agrees to immediately return possession to PVI. **PVI will also have the right to lease from Franchisee or assume Franchisee's third-party lease. In the event that PVI exercises such right, PVI shall also have the right to immediate possession of the Location. Franchisee agrees that the Location will be surrendered to PVI in as good condition as when received by Franchisee, reasonable wear and tear excepted.** If PVI is not taking possession and agrees to allow Franchisee to continue to operate the Location, Franchisee agrees to change the Location's appearance in accordance with PVI's directions so as to clearly distinguish it from a Pearle Vision System store at Franchisee's expense.

(Franchise Agreement, doc. 9-3 at 24.)

Apparently conceding that Section 34 grants PVI the right to assume his third-party lease, Dr. Adler nonetheless argues that the Court should not enforce Section 34 on the bases of waiver and modification.

### 1. Waiver

Dr. Adler first argues that PVI waived its right to assume his lease by failing to enforce Section 10.B of the Franchise Agreement at the time the parties entered into the Lease Assignment. Section 10.B specifies that in the event the franchisee, in this case Dr. Adler, enters into a third-party lease, the lease must contain several conditions, including the following terms regarding assignment:

> (iv) Landlord will permit PVI, at PVI's sole option, to assume the balance

>of the term of lease on termination or expiration of the Franchise Agreement or upon cure of the default(s) pursuant to Paragraph 3 above (whether or not the Franchise Agreement is then in effect). PVI will be permitted to assign the lease and all rights and obligations under the lease to another Pearle Vision franchisee with the Landlord's written approval of the new franchisee, which approval will not be unreasonably withheld or delayed.

(Franchise Agreement, doc. 9-3 at 13.) This language was not included in the Lease Assignment entered into by Dr. Adler, PVI, and the Landlord. Instead, the Lease Assignment states that "[t]here shall be no further assignments of the Lease or sublettings <u>without the express written consent of the Landlord</u>, as set forth in the Lease." (Lease Assignment, doc. 9-5 at 37 (emphasis added).)

"Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." <u>Glidden Co. v. Lumbermens Mut. Cas. Co.</u>, 112 Ohio St. 3d 470, 479, 861 N.E.2d 109, 119 (Ohio 2006).[5] Waiver may occur "expressly, in writing or orally, or impliedly by the acts and conduct of the parties." <u>Globe Metallurgical, Inc. v. Hewlett-Packard Co.</u>, 953 F. Supp. 876, 882 (S.D. Ohio 1996) (citing <u>Ohio Farmers Ins. v. Cochran</u>, 104 Ohio St. 427, 135 N.E. 537 (1922)). To establish the affirmative defense of waiver, Defendant Adler[6] must show that PVI had: "(1) an existing right, benefit or advantage; (2) actual or constructive knowledge of the existence of such right, benefit or advantage; and (3) an intention to relinquish this right" by consenting to the

---

[5] The Franchise Agreement specifies in Section 36 that it is to be governed by Ohio law. (Franchise Agreement, doc. 9-3 at 32.)

[6] "He who affirms a waiver must prove it, and in so doing he must prove a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part." <u>White Co. v. Canton Transp. Co.</u>, 131 Ohio St. 190, 190, 2 N.E.2d 501, 501 (Ohio 1936).

7

terms of the Lease Assignment. Gomez v. Huntington Trust Co., N.A., No. 3:98CV7436, 2001 WL 1112690 at *7 (N.D. Ohio Aug. 28, 2001 ) (citing Weaver v. Weaver, 36 Ohio App. 3d 210, 212 (Ohio App. 4th Dist. 1987)); see also Bank One of Eastern Ohio, N.A. v. Liberty Bell, Inc., No. 88-T-4142, 1990 WL 2547, at *2-3 (Ohio App. 11th Dist. Jan 12, 1990); Cokor v. Borden Chemical Div. of Borden, No. 54745, 1988 WL 136012, at *3 (Ohio App. 8th Dist. Dec. 15, 1988) ("To constitute a valid waiver, there must be an intention to relinquish that right.").

Based on those standards, the Court finds that Dr. Adler will likely be unable to prove a complete waiver of PVI's right to assume the Jackson Heights lease because the evidence currently fails to show that PVI intended to relinquish that right. PVI maintains that its failure to ensure the inclusion of those terms in the lease agreement did not amount to a waiver because: (1) the Franchise Agreement contains a non-waiver clause; (2) the Franchise Agreement specifies that modifications may only be accomplished through a writing signed by both parties; and (3) PVI had no duty to ensure that Dr. Adler performed his obligations under the Franchise Agreement. PVI's second argument, that no waiver can be found to have occurred because Section 41 of the Franchise Agreement states that the Agreement "may not be modified without the written agreement of both parties" is not persuasive as the Lease Assignment is a written document signed by both PVI and Dr. Adler. However, the presence of non-waiver provisions in the Agreement coupled with PVI's timely notice to Dr. Adler that it intended to assume his lease suggests that PVI's assent to the terms of the Lease Assignment did not result in a full waiver of its rights, vis-a-vis Dr. Adler, upon termination of the Franchise Agreement.

The existence of a non-waiver clause does not necessarily preclude the finding that a waiver has occurred. See A. Lopresti & Sons, Inc. v. General Car & Truck Leasing System, Inc.,

79 F. App'x. 764, 769, 2003 WL 22442932 (6th Cir. Ohio Oct. 27, 2003); Cokor, No. 54745, 1988 WL 136012, at *4 ("[E]ven nonwaiver clauses may not preclude a trial court from finding a waiver of rights where a party acts in an affirmative manner evincing an intent to waive contractual provisions."). However, courts applying Ohio law have enforced non-waiver clauses similar to the general non-waiver provision in this case. See Lewis & Michael Moving and Storage, Inc. v. Stofcheck Ambulance Serv., Inc., No. 05AP-662, 2006 WL 2056636, at *6 (Ohio App. 10th Dist. July 25, 2006) (holding that the defendant's failure to insist upon strict performance of obligations under a lease agreement did not result in waiver of those obligations where the lease contained a non-waiver agreement stating that "[a]ny failure of Lessor or Lessee to insist upon strict performance of any terms, conditions and covenants herein shall not be deemed as a waiver of any right or remedies upon any default by the other . . ."). Additionally, "courts finding such 'non-waiver' positions to have been waived, rely, in part, on a conclusion that a party has reasonably relied on the other party's conduct." A. Lopresti & Sons, Inc., 79 F. App'x. at 769, 2003 WL 22442932 at **4; but see Gomez, No. 3:98CV7436, 2001 WL 1112690 at *8 ("Ohio courts also do not require that the party seeking to enforce waiver to [sic] demonstrate reliance on the waiver. . . .[W]aiver may be enforced by the person who changed his or her position as a result of the waiver." (internal citations and quotations omitted)).

In this case, the Franchise Agreement contains both general and specific non-waiver provisions. The general non-waiver clause appearing at Section 37 of the Agreement provides in relevant part that:

> If any part of this Agreement were for any reason to be held invalid, the remaining parts will continue in full force and effect. PVI will not be held to have waived any portion of this Agreement as a result of not insisting upon strict compliance by Franchisee or any other franchisee of any particular provision.

9

(Franchise Agreement, doc. 9-3 at 32.)  In addition to that clause, Section 10.B.vii contains the following clause, which may also be read as a non-waiver provision: "[i]f any inconsistency exists between terms (i) through (vi) above and the lease, the above terms shall supersede and control."  (Franchise Agreement, doc. 9-3 at 13.)

Together, both clauses evince PVI's intent that the terms of the Franchise Agreement would remain in effect absent a clear and specific agreement to waive certain of those terms.  The Lease Assignment entered into by PVI, the Landlord, and Dr. Adler, states nothing about PVI's rights upon termination of the Franchise Agreement.  Nor does it explicitly waive the obligations set forth in Section 34 of the Franchise Agreement.  Furthermore, the fact that prior to expiration of the Franchise Agreement, PVI sent Dr. Adler notice of its intent to exercise that right, demonstrates that PVI had no intention to waive that right.  Finally, Dr. Adler has shown no reliance on PVI's conduct in signing the Lease Assignment.  See A. Lopresti & Sons, Inc., 79 F. App'x. at 769, 2003 WL 22442932 at **4 (finding that the plaintiff had no basis to claim that the defendant had waived its contractual rights upon termination of the parties' contract where the contract contained a non-waiver provision and "[i]n its letter responding to [the plaintiff's] termination of the Agreement, [the defendant] explicitly stated that it sought to pursue its contractual remedy against [the plaintiff]").

Defendant Adler may argue that the terms of the Lease Assignment render performance under Section 34 of the Franchise Agreement impossible.  See Gomez, No. 3:98CV7436, 2001 WL 1112690 at *7 ("Relinquishment [of a known right] can be either by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform." (internal quotations

omitted)).  However, the fact that the Landlord reserves the right to approve any assignment of Dr. Adler's lease does preclude Dr. Adler from seeking such an assignment and therefor does not render his performance impossible.

The Court recognizes that because the Landlord was not a party to the Franchise Agreement, the Landlord is not bound by that agreement and Section 10 cannot be enforced to the extent that it requires the Landlord to permit PVI to assume Dr. Adler's lease.  Moreover, the Court additionally recognizes that PVI's failure to ensure that the terms stated in Section 10.B. were included in the Lease Assignment must be considered in determining the present effect of Section 34.  However, even if the Court were to find that by signing the Lease Assignment, PVI partially waived the right to require the Landlord to approve an assignment of the lease to PVI, the Court need not and likely would not find that the Lease Assignment amounts to a full waiver of PVI's right to assume Dr. Adler's lease pursuant to Section 34.  Instead, whereas the inclusion in the Lease Assignment of the terms set forth in Section 10 of the Franchise Agreement would have preserved the absolute nature of that right, PVI's failure to include those terms leaves PVI with a right to assume the lease that is now conditional on the Landlord's approval.  In other words, though the Lease Assignment lessens the force of Section 34 in that the Assignment grants the Landlord the right to reject any proposed assignment, Section 34 of the Franchise Agreement remains in effect as to Dr. Adler and may be read to require Dr. Adler first to seek an assignment of the lease to PVI prior to seeking an assignment to a third party or continuing to use the premises for something other than a Pearle Vision store.

        **2.**        **Modification**

Dr. Adler next argues that the Lease Assignment should be characterized as a

"modification agreement" in that it modified the underlying lease and sublease for the Jackson Heights property, both of which are attached as Attachment J to the Franchise Agreement and incorporated into the Agreement under Section 41.[7] PVI responds that the Lease Assignment does not state that it modifies the Franchise Agreement and makes no mention of PVI's rights upon termination of the Franchise Agreement. Indeed, the Court finds it unlikely, for the same reasons discussed above, that the evidence will show that the Lease Assignment modified Section 34 of the Franchise Agreement to such an extent as to fully delete PVI's right to assume Dr. Adler's lease.

### B. Irreparable Injury

PVI argues that it will suffer irreparable harm should this Court not issue an injunction requiring Dr. Adler to assign the Jackson Heights lease to PVI. According to PVI, if Dr. Adler does not assign the lease to PVI and assigns it to a competitor, PVI will lose the goodwill accumulated in the location. At the time that PVI filed its Motion for Preliminary Injunction, Dr. Adler intended to assign the lease to someone other than PVI. That deal has since fallen through and Dr. Adler has stated in a supplemental declaration that "[s]ince November 2007 and continuing to date, there has been no impending arrangement to sell and no prospective buyer for the Jackson Heights Shopping Center Optical Business. (Adler Decl., doc. 24 ¶ 3.) PVI responds that Dr. Adler did not state that he will not seek to assign the lease to any other individual.

Indeed, should this Court deny PVI's motion, Dr. Adler will remain free to assign the Jackson Heights lease to another individual and PVI risks permanent loss of that location and the

---

[7] Section 41 of the Franchise Agreement states that "This document together with the referenced attachments make up this Agreement." (Doc. 9-3 at 34.)

goodwill it has developed through that store. Accordingly, there remains a substantial risk of irreparable injury. See Basicomputer Corp. v. Scott, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); Tanfran, Inc. v. Aron Alan, LLC, No. 1:06-CV-830, 2007 WL 1796235, at *9 (June 20, 2007 W.D. Mich) (finding that the Franchisor's inability to "re-franchise the area" may result in irreparable harm); Dunkin' Donuts Inc. v. Taseski, 47 F. Supp. 2d 867, 878 (E.D. Mich. 1999) (an inability to preserve the goodwill already accumulated at a location by placement of a new franchisee constitutes irreparable harm).

### C. Substantial Harm to Others

The parties do not dispute this prong, and indeed, the Court finds that no substantial harm to others will result from an order preliminarily enjoining Dr. Adler from assigning the Jackson Heights lease to anyone other than PVI.

### D. Public Interest

Like the question of whether a preliminary injunction will result in substantial harm to others, the parties do not substantially dispute the question of whether such an order would be in the public interest. Plaintiff claims that the public interest will be served by enforcing the Franchise Agreement. See Convergys Corp. v. Wellman, No. 1:07-cv-509, 2007 WL 2206556, at * 3 (S.D. Ohio July 30, 2007) ("The public interest is served by enforcement of freely bargained-for contracts."). The Court finds that, given the strong likelihood that Plaintiff will succeed on the merits, this factor also weighs in favor of granting Plaintiff's motion.

### E. Failure to Join an Indispensable Party

In addition to objecting to an injunction, Dr. Adler also argues that this case should be

dismissed for failure to join necessary parties – Rosing Inc. and Jackson Heights LLC – pursuant to Federal Rule of Civil Procedure 19. To determine whether dismissal is appropriate under these circumstances, the Court engages in a three-step analysis. Local 670, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, 822 F.2d 613, 618 (6th Cir. 1987). First, the Court must determine whether the landlord and Rosing Inc. are parties required to be joined if feasible. Id.; Fed. R. Civ. P. 19(a). To make that determination, the Court considers whether:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed R. Civ. P. 19(a). If the Court determines that either the landlord or Rosing Inc. are required to be joined, the Court must next determine whether it has jurisdiction over the party, if it does not, whether the Court may proceed without the party pursuant to the factors set forth in Rule 19(b).

In the instant case, Defendant argues that Rosing Inc. and the landlord are required parties, but fails to demonstrate that the joinder of these parties would not be feasible, other than suggesting that the Court lacks jurisdiction over them. Nor does Defendant significantly address the factors in 19(b). In other words, Defendant has not shown at this point that dismissal is

required.  Moreover, to the extent that Rosing Inc. or the landlord are ultimately deemed necessary parties, their joinder is not required at this stage.  The interests of Rosing Inc., a company wholly owned by Dr. Adler, are fully protected by Dr. Adler's presence in this case.  As to the landlord, the issuance of the preliminary injunction described in the first paragraph of this Order does not significantly effect the landlord's interests.  Accordingly, the question of joinder need not be determined at this instant.

**V.      CONCLUSION**

Accordingly, this Court **GRANTS** Plaintiff's Motion for a Preliminary Injunction.  (Doc. 13.)  As described above, Dr. Adler is hereby preliminarily enjoined from seeking an assignment of his Jackson Heights lease to any third party unless and until he first offers to assign the lease to PVI.  Further, the Court orders Dr. Adler to, within a reasonable time not to exceed thirty days from the date of this order, seek the Landlord's approval to assign the Jackson Heights lease to PVI.  Should PVI refuse to accept the assignment or should the Landlord fail to approve a documented request to assign the lease to PVI within thirty days of Dr. Adler's request, Dr. Adler will then be free to seek an assignment of the lease to a third party or to remain in possession of the premises as lessee in accordance with the terms set forth in Section 34 of the parties' franchise agreement.

IT IS SO ORDERED.

\_\_\_s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge